**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**JOY DANIELLE DOSS-CORNELISON**                                              **PETITIONER**

V.                              **CASE NO. 5:13CV00333 DPM/BD**

**RAY HOBBS, Director,
Arkansas Department of Correction**                                              **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.      Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to United States District Court Judge D. P. Marshall Jr.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

**II.     Introduction**

The Court issued a report and recommendation to Judge D.P. Marshall Jr. recommending that Joy Danielle Doss-Cornelison's petition for writ of habeas corpus be denied and that her case be dismissed with prejudice.  (Docket entry #15)  Ms. Doss-Cornelison objected to the report and recommendation.  (#22)  Her objections to the report and recommendation fall into two categories: (1) there were extraordinary circumstances preventing her from filing a timely habeas petition; and (2) she is actually innocent of the crime for which she is currently imprisoned.

Judge Marshall reviewed Ms. Doss-Cornelison's objections, declined to accept the report and recommendation, and referred the case for consideration of Ms. Doss-Cornelison's objections.  (#23)

Director Hobbs has responded to Ms. Doss-Cornelison's objections.  (#27)  For the reasons explained below, the Court again recommends that Ms. Doss-Cornelison's Petition for Writ of Habeas Corpus (#2) and Supplement (#8) be denied and that the case dismissed with prejudice.

III.   **Equitable Tolling**

The background of Ms. Doss-Cornelison's conviction and post-conviction filings are set forth in detail in the Court's prior recommended disposition. (#15) In her objections, Ms. Doss-Cornelison does not contest that the instant petition was filed after the statute of limitations had expired. (#22) Instead, she argues that equitable tolling should apply to excuse her untimely filing. She claims the following circumstances were extraordinary and warrant equitable tolling:

- The Arkansas Supreme Court rules were vague. (#22 at p. 1)
- Her mother had advanced lung cancer. (#22 at p. 2)
- She was admitted to the mental health ward. (*Id*.)
- She had limited access to the law library. (*Id*.)
- While in the mental health ward, she was forced to send her transcript and legal papers out. (*Id*.)
- She thought she had to bring a state habeas petition to exhaust her state remedies. (*Id*.)
- She thought there was no deadline for filing a state habeas. (*Id*. at p. 3)
- In 2008, she began "trying to get her transcript and legal papers sent in." (*Id*.)
- She attempted sending Freedom of Information Act ("FOIA") requests. (*Id*.)
- Her mother died in 2007. (*Id*. at p. 4)
- Her sister was diagnosed with cancer. (*Id*.)
- Her father had the transcript and legal papers, but didn't know where they were because her mother had "put them away before her death." (*Id*.)
- Her sister was busy caring for her 3 children.
- The death of a grandson, daughter, and several brothers and sisters hit her father hard. (*Id*.) "To this day Petitioner still has not received" her legal papers from her father, and in 2012, she gave up on getting the papers from him.[1] (*Id*.)

---

[1] Ms. Doss-Cornelison admits, however, receiving a "discovery package" in 2009 that revealed counsel's errors. (#22 at pp. 3, 6-7)

- None of the books said that a state habeas is not a step of the exhaustion process. (*Id.*)
- FOIA and her father were extraordinary circumstances standing in the way of her filing a timely habeas petition. (*Id*. at p. 5)
- The inadequate law library was an extraordinary circumstance. (*Id.*)
- The combination of all of these circumstances was extraordinary. (*Id.*)

None of the circumstances described by Ms. Doss-Cornelison is the type of extraordinary circumstances that warrants application of equitable tolling under Eighth Circuit case law. See *Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012)(petitioner's pro se status and failure to follow rules for filing state post-conviction petitions did not constitute extraordinary circumstances); *Earl v. Fabian*, 556 F.3d 717, 724-25 (8th Cir. 2009)(lack of legal knowledge or legal resources did not warrant equitable tolling; limited access to the library did not excuse failure to act with the requisite diligence to file habeas petition); *Runyan v. Burt*, 521 F.3d 942, 945–46 (8th Cir. 2008)(where a habeas petitioner encountered "the kinds of obstacles faced by many if not most habeas petitioners," equitable tolling is inapplicable because Congress is presumed to have considered such equities in determining that one year represents a fair and appropriate limitations period); *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001)(lack of access to a trial transcript did not preclude petitioner from commencing post-conviction proceedings and therefore did not warrant equitable tolling)(citing *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001)).

The fact that Ms. Doss-Cornelison wanted to pursue a state habeas petition does not excuse her from diligently taking steps to preserve and timely pursue her federal habeas claims. See *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)(prisoner seeking

state post-conviction relief can file a "protective" federal habeas petition and ask federal court to stay the habeas action until conclusion of state proceedings); *Runyan v. Burt*, 521 F.3d 942, 945–46 & n. 4 (8th Cir. 2008)(no equitable tolling where petitioner could have protected himself during their pendency of state proceedings by filing a timely federal habeas petition and seeking "stay and abeyance"); *Walker v. Norris*, 436 F.3d 1026, 1030–31 (8th Cir. 2006).

Further, Ms. Doss-Cornelison's housing in a mental health unit from May, 2006 until the end of January, 2007, which she claims limited her access to the law library and her personal legal materials, does not warrant equitable tolling. Ms. Doss-Cornelison does not allege that she was denied access to paper or pencils or that she was unable to send legal mail while housed in the mental health unit.[2] Because Ms. Doss-Cornelison has failed to demonstrate how her housing assignment prevented her from meeting the one-year statute of limitations, that circumstance does not justify equitable tolling. See *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013)(petitioner failed to demonstrate how his five months of special confinement prevented him from meeting the one-year statute of limitations); *Symmes v. Waddell*, 446 F. App'x 821, 822 (8th Cir. 2012)(petitioner who claimed mental illness prevented him from filing within the statute of limitations was denied equitable tolling because the court found, based on his own

---

[2] Inmate grievance records attached to Mr. Hobbs's response indicate that Ms. Doss-Cornelison was able to file several grievances while housed in the mental health unit. (#27-1 at p. 12)

admission, statements of his therapist, and other evidence in the record, that he was capable of filing his petition sometime in 2007 but waited until 2009).

Ms. Doss-Cornelison seems to ground her equitable tolling claims on the unavailability of her legal documents. She admits, however, that she received documentation that brought to light her claims of ineffective assistance of counsel in 2009; yet she waited over three years after receiving the documentation to file her petition. (#22 at p. 6) Under the circumstances, Ms. Doss-Cornelison has not established that she diligently pursued her rights so as to be entitled to equitable tolling. See *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2562 (2010).

## IV. Actual Innocence

In her objections to the recommendation, Ms. Doss-Cornelison also claims that her actual innocence warrants tolling the statute of limitations. In her petition, Ms. Doss-Cornelison bases her claim of actual innocence on the following: (1) photographs establishing that, in spite of evidence that the victim had a knife and fought with his attackers, she had no new marks, cuts, scrapes, or bruises; (2) lab reports which she claims show that none of the victim's blood was found on her; (3) witnesses, including Chloe Howell and Sidney Ames, who would have testified that she "had no conflict with the victim, while Pugh was aggressive and hostile towards the victim - to the point of at least one witnessed 'altercation;'" and (4) she always maintained that she did not want the victim to die, and she had no knowledge that the murder was planned. (#2 at pp. 8-9)

In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928 (2013), the United States Supreme Court held that actual innocence, if proved, serves as a gateway through which a petitioner may pass to overcome the expiration of the statute of limitations.  The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare," and "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851 (1995))(emphasis added).  Further, the Court held that unjustifiable delay on a habeas petitioner's part, while not to be viewed as "an absolute barrier to relief," should still be considered as a "factor in determining whether actual innocence has been reliably shown." *Id*. at 1928, 1935.

Here, Ms. Doss-Cornelison has failed to show that, more likely than not, no reasonable juror would have convicted her in the light of new evidence.  First, the evidence relied on by Ms. Doss-Cornelison to establish her actual innocence is not new evidence.  The photographs Ms. Doss-Cornelison attaches to her petition were taken immediately after the incident in December, 2000.  (Photographs attached to #2)  Sidney Aimes's statement was taken as part of the investigation on December 11, 2000.  (#2 at pp. 20-22)  Chloe Howell's statement was taken as part of the investigation on January 4, 2001.  In her September, 2003 Rule 37 petition, Ms. Doss Cornelison complained that her counsel was ineffective for failing to subpoena Chloe Howell to testify as a witness at

trial.³ (#2 at p. 23-29, 41) The State Crime Laboratory Analysis Reports Ms. Doss-Cornelison relies on are dated June 6, 2001, and August 20, 2001. (#2 at pp. 34, 36-37) All of this evidence, as well as her contention that she did not want the victim to die and had no knowledge that the murder was planned,⁴ was available to Ms. Doss-Cornelison prior to trial. (#2 at p. 40) See *Schlup*, 513 U.S. at 324 (a claim of actual innocence requires that petitioner "support his allegation of constitutional error with new reliable evidence. . . .").

A federal habeas court, assessing whether it is more likely than not that no reasonable jury would have found the petitioner guilty beyond a reasonable doubt, must consider "all the evidence, old and new, incriminating and exculpatory," and make a "probabilistic determination about what reasonable, properly instructed jurors would do." *House v. Bell*, 547 U.S. 518, 538 (2006).

Here, even if the jury had heard testimony that the victim and Mr. Pugh had altercations prior to the murder, that Mr. Pugh was aggressive, that both the victim and Mr. Pugh were noted by Ms. Howell to have had slash marks on their arms prior to this incident, that Ms. Doss-Cornelison had no new wounds on her arms in spite of the fact that the victim had a knife, and that none of the victim's blood was found on her clothes,

---

³ The Court found after a hearing where her counsel testified, that the decision was based on trial counsel's professional assessment that the testimony would not be beneficial to the defense. (#2 at p. 41, #8 at pp. 4-8)

⁴Ms. Doss-Cornelison testified at her trial and presumably had an opportunity to tell the jury her version of the facts. *Doss v. State*, 351 Ark. 667, 672 (2003).

the evidence is insufficient to overcome the evidence of guilt produced at trial, which included Ms. Doss-Cornelison's confession statements. The Arkansas Supreme Court summarized the evidence presented at trial as follows:

> At trial, Doss' statements were admitted into evidence, and testimony was taken. Each police officer involved in the investigation as well as the criminal investigators from the state crime lab testified. Additionally, the State presented testimony from Stacey Cooper, who had been in a jail cell with Doss following her arrest. Cooper testified that Doss had told her and a third cellmate that she had killed her roommate by smothering him with a pillow and later had strangled him with a belt. She also testified that Doss's only regret was that Uptegrove had called the police before she did and implicated her. The medical examiner testified that Van Maren died of asphyxia due to a combination of strangulation and suffocation. Doss presented a defense of duress due to Pugh's threats and a general lack of scientific evidence connecting her to the crime. She took the stand in her own defense.

*Doss v. State*, 351 Ark. 667, 671-72 (2003).

Ms. Doss-Cornelison has not established that, in light of the alleged new evidence, no reasonable jury would have convicted her. Accordingly, she cannot pass through the actual innocence gateway to overcome the expiration of the statute of limitations. In reaching this conclusion, the Court has considered Ms. Doss-Cornelison's delay in filing her petition as a factor.

**V.     Certificate of Appealability**

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. A certificate of appealability may issue only if Ms. Doss-Cornelison has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253 (c)(1)-(2). In this case, after considering Ms. Doss-Cornelison's petition, supplement, and objections to the first recommended disposition, she has not provided a basis for the Court to issue a certificate of appealability.

## VI. Conclusion

After reviewing Ms. Doss-Cornelison's claims for habeas relief, as well as her objections to the first recommended disposition, the Court finds that Ms. Doss-Cornelison's claims are barred by the one-year limitations period established by 28 U.S.C. § 2244(d). Accordingly, the Court recommends that Joy Doss-Cornelison's petition for writ of habeas corpus (#2) and supplement (#8) be DENIED and her case DISMISSED, with prejudice. The Court further recommends that no certificate of appealability be issued.

DATED this 24th day of April, 2013.

_____
UNITED STATES MAGISTRATE JUDGE